UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION

**MITCHELL PAUL MEYER**                                                                                          **PLAINTIFF**

**v.**                                                                      **CIVIL ACTION NO. 5:25-CV-P31-JHM**

**THE ENITY OF GRAVES CO.** *et al.*                                                                        **DEFENDANTS**

## MEMORANDUM OPINION

This is a *pro se* 42 U.S.C. § 1983 prisoner civil-rights action. This matter is before the Court for screening pursuant to 28 U.S.C. § 1915A. For the reasons set forth below, the Court will dismiss this action.

### I.

Plaintiff Mitchell Paul Meyer is incarcerated at Christian County Jail (CCJ). He names the following as Defendants in this action – "The Enity of Graves Co.," also known as Graves County; Graves County Sheriff's Department (GCSD); the McCracken County Jail (MCJ); "KSP," also known as the Kentucky State Police; the Department of Public Advocacy (DPA); John Null, a public defender; Cirris Hatfield, a public defender; Michael A. Bennett, a Graves County prosecutor;[1] Jake Mason, Jr., Graves County Jail (GCJ) Deputy Jailer; and Pete Jackson, "Graves County R.C.C. Center"[2] Deputy Jailer. Plaintiff sues the individual Defendants in both their official and individual capacities.

Plaintiff first alleges that on December 9, 2024, he asked GCJ-RCC Deputy Jailer Pete Jackson if he could use the telephone to call an attorney. Plaintiff states that Defendant Jackson

---

[1] The Court takes judicial notice that a "Michael Bennett" is the U.S. Attorney for the Western District of Kentucky. However, for purposes of this initial review only, the Court will assume that there is also a Commonwealth's Attorney named Michael A. Bennett who prosecuted Plaintiff in Graves County.

[2] According to GCJ's website, the Graves County Restricted Custody Center (RCC) is part of the GCJ. The website state states the goal of the RCC is to "support a successful transition to the community. . . ." *See* www.gravescountyjailky.com/ programs.php (last accessed Mar. 19, 2025).

asked him why he needed an attorney and he told him it was because he had filed a civil-rights action in this Court, No. 4:24-cv-118-JHM. Plaintiff states that Defendant Jackson then stated, "Yeah, I remember that, I was part of the investigation." Plaintiff states that Defendant Jackson then told him that he could not use the phone to call a lawyer. Plaintiff claims that Defendant Jackson's actions violated his rights under the First and Third Amendments of the U.S. Constitution.

Plaintiff next alleges that in October 2023, he was wrongfully taken into custody by a "Graves County S.O." and incarcerated at the Defendant MCJ "for a mental health detainer & on the charge of assault in the 4th degree." Plaintiff alleges that Defendant MCJ "failed to execute the 72 hr evaluation & refused to let me post the $2500 cash bond once it expired." Plaintiff asserts that these allegations show that Defendant MCJ violated his rights under the First and Third Amendments the U.S. Constitution.

Plaintiff next alleges that in March 2024 he was charged for possession of marijuana by the KSP. Plaintiff states that Defendants Null and Hatfield were the two public defenders the DPA assigned to represent him on the charge even though he had previously had "conflicts" with both. Plaintiff states that he believes Defendants Null and Hatfield were in a conspiracy with the Commonwealth to get Plaintiff to enter a guilty plea even though he was innocent. Plaintiff asserts that these Defendants' actions violated his rights under the First and Third Amendments to the U.S. Constitution. He relatedly states that he believes that Defendants Null and Hatfield, the "Commonwealth Attorney," the KSP, Graves County, and the DPA "are guilty of violating my constitutional rights and the Federal RICO law for it is clearly a scheme to manipulate innocent people out of their money."

Plaintiff next asserts that while incarcerated at GCJ in 2020, a small fire ignited in the microwave he was using. He states that shortly thereafter Defendant GCJ Deputy Jailer Mason took him to solitary confinement. Plaintiff states that he was charged with 62 counts of first-degree wanton endangerment even though he does not think he committed a crime. Plaintiff states that he believes Defendants GCJ Deputy Jailers Mason and Jackson "abused their power & acted maliciously in an attempt to make me enter into a plea deal."

Plaintiff then describes another crime he believes he was wrongfully charged with related to a vehicle fire. He states that after a vehicle caught fire in his driveway, the fire department and police "showed up and did an investigation in which I fully cooperated." He states that the next day he decided to burn his trash in the cab of the vehicle. Plaintiff states that the "sherif's office charged me for arson in the first degree & took me straight to jail where I am now serving a 10 year prison sentence because of their malicious prosecution and . . . violation of his [constitutional] rights" by Graves County.

As relief, he seeks damages and various forms of injunctive relief.

## II.

Because Plaintiff is a prisoner seeking relief against governmental entities, officers, and/or employees, this Court must review the instant action under 28 U.S.C. § 1915A. Under § 1915A, the trial court must review the complaint and dismiss the complaint, or any portion of the complaint, if the court determines that it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* § 1915A(b)(1), (2); and *McGore v. Wrigglesworth*, 114 F.3d 601, 604 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007). To survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a

claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). "[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). However, while liberal, this standard of review does require more than the bare assertion of legal conclusions. *See Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995). The Court's duty "does not require [it] to conjure up unpled allegations," *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979), or to create a claim for Plaintiff. *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975). To command otherwise would require the court "to explore exhaustively all potential claims of a *pro se* plaintiff, [and] would also transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

### III.

"Section 1983 creates no substantive rights, but merely provides remedies for deprivations of rights established elsewhere." *Flint ex rel. Flint v. Ky. Dep't of Corr.*, 270 F.3d 340, 351 (6th Cir. 2001). Two elements are required to state a claim under § 1983. *Gomez v. Toledo*, 446 U.S. 635 (1980). "[A] plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person

acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). "Absent either element, a section 1983 claim will not lie." *Christy v. Randlett*, 932 F.2d 502, 504 (6th Cir. 1991).

### A. Third Amendment Claims

As indicated above, Plaintiff also alleges that various Defendants violated his rights under the Third Amendment. The Third Amendment provides that "no Soldier shall, in time of peace be quartered in any house, without the consent of the Owner, nor in time of war, but in a manner to be prescribed by law." U.S. Const. amend. III. The Court cannot discern how this Amendment applies to Plaintiff's claims in any way. Thus, the Court will dismiss Plaintiff's Third Amendment claims for failure to state a claim upon which relief may be granted.

### B. Public Defenders Null and Hatfield

It is firmly established that a defense attorney, regardless of whether he or she is a public defender or a private attorney, is not a state actor for purposes of § 1983. *Polk Cnty. v. Dodson*, 454 U.S 312, 325 (1981) ("[A] public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding."); *Otworth v. Vanderploeg,* 61 F. App'x 163, 165 (6th Cir. 2003) ("[A] lawyer representing a client is not, by virtue of being an officer of the court, a state actor under color of state law within the meaning of § 1983.").

Thus, the Court will dismiss Plaintiff's § 1983 claims against Defendants Null and Hatfield for failure to state a claim upon which relief may be granted.

### C. State Defendants

#### 1. DPA and KSP

Both the DPA and KSP are state agencies. *See, e.g.*, *Lowe v. Ky. Court of Justice*, No. 2:14-168-KKC, 2015 U.S. Dist. LEXIS 43527, at *4 (E.D. Ky. Apr. 2, 2015) ("Ky. Rev. Stat.

5

31.010 establishes DPA as [a] state agency. . . ."); *Ward v. Ky. State Police*, No. 3:16-cv-393-RGJ, 2019 U.S. Dist. LEXIS 129517, at *6 (W.D. Ky. Aug. 2, 2019) ("KSP is a department within the executive branch of the Commonwealth, is tasked with statewide law enforcement, and is funded by the Kentucky General Assembly.") (citing Ky. Rev. Stat. §§ 15A.020, 16.060, 16.050(1)). A state and its agencies are not "persons" subject to suit under § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994).

Moreover, under the Eleventh Amendment, a state and its agencies may not be sued in federal court, regardless of the relief sought, unless the state has waived its immunity or Congress has overridden it. *See Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144 (1993). The Commonwealth of Kentucky has not waived its immunity, *see Adams v. Morris*, 90 F. App'x 856, 857 (6th Cir. 2004), and in enacting § 1983, Congress did not intend to override the traditional sovereign immunity of the states. *Whittington v. Milby*, 928 F.2d 188, 193-94 (6th Cir. 1991) (citing *Quern v. Jordan*, 440 U.S. 332, 341 (1979))

Thus, the Court will dismiss Plaintiff's claims against the DPA and KSP for failure to state a claim upon which relief may be granted and for seeking damages from a defendant immune from suit.

### 2. Commonwealth's Attorney Michael Bennett

#### a. Official-Capacity Claim

"Official-capacity suits . . . 'generally represent [] another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) (quoting *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. at 690 n.55)). Thus, because Defendant Bennett is an officer of the Commonwealth, the claims brought against him in his official capacity are deemed claims against the Commonwealth and must be dismissed for the

reasons set forth above. *See Kentucky v. Graham*, 473 U.S. at 166; *Boone v. Kentucky*, 72 F. App'x 306, 307 (6th Cir. 2003) ("[Plaintiff's] request for monetary relief against the prosecutors in their official capacities is deemed to be a suit against the state and also barred by the Eleventh Amendment.").

### b. Individual-Capacity Claim

It is well-established that prosecutors are entitled to absolute immunity for conduct intimately associated with the judicial phase of the criminal process. *See Imbler v. Pachtman*, 424 U.S. 409, 430 (1976); *Higgason v. Stephens*, 288 F.3d 868, 878 (6th Cir. 2002). Prosecutorial immunity even applies when a prosecutor acts wrongfully or maliciously. *See, e.g.*, *Grant v. Hollenbach*, 870 F.2d 1135, 1138 (6th Cir. 1989). Thus, because Plaintiff's allegations against Defendant Bennett seem to pertain only to the judicial phase of a state-court criminal proceeding against him, Plaintiff's claims against him are barred by prosecutorial immunity and must be dismissed.

### D. County Defendants

### 1. McCracken County Jail/McCracken County

As set forth above, Plaintiff alleges that in October 2023, he was wrongfully taken into custody by a "Graves County S.O." and incarcerated at the MCJ "for a mental health detainer & on the charge of assault in the 4th degree." Plaintiff alleges that MCJ "failed to execute the 72 hr evaluation & refused to let me posted the $2500 cash bond once it expired." Plaintiff asserts that these allegations show that MCJ violated his constitutional rights.

The Court first observes that MCJ is not an entity subject to suit under § 1983. *See, e.g.*, *Marbry v. Corr. Med. Serv.*, No. 99-6706, 2000 U.S. App. LEXIS 28072, *5 (6th Cir. Nov. 6, 2000) (holding that a jail is not an entity subject to suit under § 1983) (citing *Rhodes v.*

*McDannel*, 945 F.2d 117, 120 (6th Cir. 1991)).  Rather, it is McCracken County that is proper Defendant in this situation.  *See Smallwood v. Jefferson Cnty. Gov't*, 743 F. Supp. 502, 503 (W.D. Ky. 1990).

The Sixth Circuit "has continuously held that under § 1983, a county can only be held liable if there is a showing of an underlying constitutional violation by the county's officials." *Burkey v. Hunter*, 790 F. App'x 40, 41 (6th Cir. 2020) (listing cases).  Axiomatically, "[t]here can be no *Monell* municipal liability under § 1983 unless there is an underlying unconstitutional act." *Wilson v. Morgan*, 477 F.3d 326, 340 (6th Cir. 2007) (citing *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986)).

If there is an underlying unconstitutional act, a county can only be held responsible for a constitutional deprivation if there is direct causal link between a policy or custom and the alleged constitutional deprivation.  *Monell*, 436 U.S. 658, 691.  Thus, to state a claim against a municipality, a plaintiff must "identify the policy, connect the policy to the [entity] itself and show that the particular injury was incurred because of the execution of that policy." *Garner v. Memphis Police Dep't*, 8 F.3d 358, 363-64 (6th Cir. 1993) (quoting *Coogan v. City of Wixom*, 820 F.2d 170, 176 (6th Cir. 1987), *overruled on other grounds by Frantz v. Vill. of Bradford*, 245 F.3d 869 (6th Cir. 2001)).  The policy or custom "must be 'the moving force of the constitutional violation' in order to establish the liability" of the entity under § 1983.  *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994) (quoting *Polk Cnty. v. Dodson*, 454 U.S. 312, 326 (1981) (citation omitted)).

Here, Plaintiff's claims against McCracken County must be dismissed for failure to state a claim because the Court finds no underlying constitutional violation herein.  And even if the Court had found such a violation, the Plaintiff's claims against McCracken County would still fail

because Plaintiff does not connect any violation to a specific McCracken County custom or policy. Indeed, his allegations against the MCJ pertain only to himself and an isolated incident that occurred on one occasion.

### 2. Defendants Graves County and GCSD/Official-Capacity Claims

Like a jail, a sheriff's department such as GCSD is not an entity subject to suit. *Rhodes*, 945 F.2d at 120 (holding that a sheriff's department is not a legal entity subject to suit under § 1983). Rather, as explained above, such a claim is actually construed as claim against the county itself, which, here, is Defendant Graves County. Moreover, Plaintiff's official-capacity claims against Defendants GCJ Deputy Jailer Mason and GCJ-RCC Deputy Jailer Jackson are also actually against their employer, Defendant Graves County. *See Kentucky v. Graham*, 473 U.S. at 166; *Monell*, 436 U.S. at 691 n.55.

As set forth below, Plaintiff has failed to show that any Graves County official violated his constitutional rights. Thus, because there is no showing of an underlying constitutional violation, Plaintiff's claims against Graves County, the GCSD, and his official-capacity claims against Defendants Mason and Jackson must be dismissed for failure to state a claim upon which relief may be granted.

### 3. Individual-Capacity Claims

#### a. Deputy Jailer Jackson

The Court next addresses Plaintiff's allegation that on one occasion he asked Defendant Jackson if he could use the telephone to call an attorney and that Defendant Jackson asked him why he needed an attorney. Plaintiff states that he told Defendant Jackson it was because he had filed a civil-rights action in this Court, No. 4:24-cv-118-JHM. Plaintiff alleges that Defendant Jackson then stated, "Yeah, I remember that, I was part of the investigation." Plaintiff states that

9

Defendant Jackson then told him that he could not use the phone to call a lawyer. As set forth above, Plaintiff claims that Defendant Jackson's actions violated his rights under the First Amendment.

The Court construes Plaintiff's First Amendment claim as a both a claim for denial of access to the courts and a retaliation claim. The Court will address them in turn.

### (1) Denial of Access to the Courts

"The First Amendment affords prisoners a right of access to the courts." *Rodgers v. Hawley*, 14 F. App'x 403, 408 (6th Cir. 2001). To state a claim for denial of access to the courts, a plaintiff must allege that the "prison officials' conduct inflicted an 'actual injury,' *i.e.*, that the conduct hindered his efforts to pursue a nonfrivolous legal claim." *Id*. at 409 (citing *Lewis v. Casey*, 518 U.S. 343, 351-53); *Brown v. Matauszak*, 415 F. App'x 608, 612 (6th Cir. 2011). Deprivation of this right "in some theoretical sense" will not establish a violation of the right to access the courts. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). Rather, a plaintiff must show "actual prejudice to non-frivolous claims." *Hadix v. Johnson*, 182 F.3d 400, 406 (6th Cir. 1999). "Examples of actual prejudice to pending or contemplated litigation include having a case dismissed, being unable to file a complaint, and missing a court-imposed deadline." *Harbin-Bey v. Rutter*, 420 F.3d 571, 578 (6th Cir. 2005).

Here, Plaintiff does not allege that Defendant Jackson's refusal to let him make a phone call to an attorney on one occasion caused any actual prejudice to a non-frivolous legal claim. Thus, the Court will dismiss this claim for failure to state a claim upon which relief may be granted.

### (2) Retaliation Claim

A First Amendment retaliation claim has three elements: "(1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person

10

of ordinary firmness from continuing to engage in that conduct; and (3) . . . the adverse action was motivated at least in part by the plaintiff's protected conduct." *Berkshire v. Dahl*, 928 F.3d 520, 531 (6th Cir. 2019) (quoting *King v. Zamiara*, 680 F.3d 686, 694 (6th Cir. 2012)).

For purposes of this initial review only, the Court will assume that Plaintiff's allegations satisfy the first and third element of this standard – that is that Plaintiff's filing of a lawsuit in federal court constitutes protected conduct, *see Bell v. Johnson*, 308 F.3d 594, 607 (6th Cir. 2002), and that Defendant Jackson refused to allow Plaintiff to call an attorney because Plaintiff had engaged in such conduct. However, the finds that Plaintiff's allegation fails to satisfy the second element of the above standard – the adverse action element.

An action is adverse if it would "deter a person of ordinary firmness from the exercise of the right at stake." *Thaddeus-X*, 175 F.3d at 396-97. "While certain threats or deprivations are so de minimis that they do not rise to the level of being constitutional violations, this threshold is intended to weed out only inconsequential actions, and is not a means whereby solely egregious retaliatory acts are allowed to proceed past summary judgment." *Id.* at 398. Acts that are more than "petty slights or minor annoyances" constitute adverse actions. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006). "Thus, unless the claimed retaliatory action is truly 'inconsequential,' the plaintiff's claim should go to the jury." *Bell*, 308 F.3d at 603 (quoting *Thaddeus-X*, 175 F.3d at 398).

Upon review of jurisprudence in the Sixth Circuit on this issue, the Court concludes that Defendant Jackson's alleged refusal to allow Plaintiff to call an attorney on one occasion is too inconsequential to deter a person of ordinary firmness from filing a federal action. *See, e.g.*, *Moore v. Liewert*, No. 22-2056, 2023 U.S. App. LEXIS 21563, at *9 (6th Cir. Aug. 16, 2023) ("the denial of a single meal, even taking into consideration [the inmate]'s diabetes, is a de minimis event that

11

would not deter a prisoner of ordinary firmness from engaging in protected conduct"); *Abraitis v. Moon*, No. 19-cv-2379, 2020 U.S. App. LEXIS 27827, at *8 (6th Cir. Sept. 1, 2020) ("preventing [a prisoner] from going to his work assignment on one day [does] not amount to an adverse action that would sustain a retaliation claim"); *Meeks v. Schofield*, 625 F. App'x 697, 701-02 (6th Cir. 2015) (affirming district court's determination that searches of a prisoner's work station or denial of access to the library on one occasion were de minimis conduct that did not constitute adverse action); *Reynolds-Bey v. Harris*, 428 F. App'x 493, 503-04 (6th Cir. 2011) ("A single shakedown, unaccompanied by excessive use of force, verbal threats, a pattern of previous questionable shakedowns or other such factors, would not meet the adverse action standard."); *Williams v. Crafton*, No. 1:22-CV-P86-JHM, 2023 U.S. Dist. LEXIS 242874, at *5 (W.D. Ky. Dec. 5, 2023) (holding that taking a Qur'an out of a prisoner's hand on one occasion and confiscating his bed roll for two hours on another occasion would not deter a person of ordinary firmness from filing a federal action); *Hatfield v. Daviess Cnty. Det. Ctr.*, No. 4:17-CV-P12-JHM, 2017 U.S. Dist. LEXIS 66337, *8 (W.D. Ky. May 2, 2017) (finding that "the alleged denial of a one-hour recreation period on one occasion does not rise to the level of an 'adverse action'").

Thus, the Court will dismiss Plaintiff's First Amendment retaliation claim against Defendant Jackson for failure to state a claim upon which relief may be granted because Plaintiff's allegations do not satisfy the adverse action element of a retaliation claim.

### b. Defendants Deputy Jailers Mason and Jackson

Plaintiff claims that Defendants Mason and Jackson engaged in malicious prosecution when they charged him with 62 counts of first-degree wanton endangerment after he started a fire in the microwave at GCDC so that he would enter a guilty plea.

The elements of a Fourth Amendment malicious prosecution claim are as follows: (1) "that a criminal prosecution was initiated against the plaintiff and that the defendant 'ma[d]e, influence[d], or participate[d] in the decision to prosecute'"; (2) "that there was a lack of probable cause for the criminal prosecution"; (3) "that, as a consequence of a legal proceeding, the plaintiff suffered a 'deprivation of liberty' . . . apart from the initial seizure"; and (4) that "the criminal proceeding must have been resolved in the plaintiff's favor." *Tlapanco v. Elges*, 969 F.3d 638, 654-55 (6th Cir. 2020) (quoting *Sykes v. Anderson*, 625 F.3d 294, 308-09 (2010)).

Here, Plaintiff does not allege that the criminal proceeding Defendants Mason and Jackson allegedly initiated against him was resolved in his favor. Thus, the Court will dismiss this malicious prosecution claim for failure to state a claim upon which relief may be granted.

### E. Remaining Claims

### 1. Second Malicious Prosecution Claim

As set forth above, Plaintiff also believes he was wrongfully charged in relation to a vehicle fire. Plaintiff states that the "sherif's office charged me for arson in the first degree & took me straight to jail where I am now serving a 10 year prison sentence because of malicious their malicious prosecution and . . . violation of his [constitutional] rights" by Graves County.

This malicious prosecution claim fails for the same reason his first claim failed – because Plaintiff does not allege that the criminal proceeding at issue was resolved in his favor. Rather, he indicates the opposite – that he was found guilty of arson and that he is currently serving a sentence for that crime. Thus, the Court will dismiss this malicious prosecution claim for failure to state a claim upon which relief may be granted.

### 2. Civil Conspiracy/RICO Claims

Finally, the Court turns to Plaintiff's alleges that the Defendant prosecutor, public defenders, the KSP, the DPA, and Graves County conspired to get him to enter a guilty plea in one of his criminal cases. Notwithstanding the Court's dismissal of these Defendants for other reasons, as set forth above, Plaintiff's civil conspiracy and Racketeer Influenced and Corrupt Organizations Act (RICO) claims fail to state a claim.

Plaintiff's civil conspiracy claim is barred by the doctrine set forth in *Heck v. Humphrey*, 512 U.S. 477 (1994). In *Heck*, the Supreme Court held that a state prisoner cannot make a cognizable claim under § 1983 for an allegedly unconstitutional conviction or for "harm caused by actions whose unlawfulness would render a conviction or sentence invalid" unless a prisoner shows that the conviction or sentence has been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994); *see also Edwards v. Balisok*, 520 U.S. 641, 646-48 (1997); *Thomas v. Eby*, 481 F.3d 434, 438 (6th Cir. 2007). In *Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005), the Supreme Court clarified the *Heck* rule, finding "that a state prisoner's § 1983 action is barred (absent prior invalidation)—no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)—if success in that action would necessarily demonstrate the invalidity of confinement or its duration." The Sixth Circuit has applied the *Heck* doctrine to conspiracy claims which would call a plaintiff's conviction into question. *See, e.g.*, *Holland v. Cnty. of Macomb*, No. 16-2103, 2017 U.S. App. LEXIS 14958, at *5 (6th Cir. Mar. 17, 2017) (holding that *Heck* barred conspiracy claims); *see also Allen v. Clark*, No. 1:13CV326, 2014 U.S. Dist. LEXIS 90807, at *22 (S.D. Ohio July 3, 2014) (holding *Heck*

barred plaintiff's § 1983 claim that defendants unconstitutionally conspired to convict him of crimes he did not commit).

Thus, because Plaintiff has not demonstrated that his conviction in the relevant action has been reversed on direct appeal, expunged by executive order, declared invalid by a statute tribunal, or called into question by the issuance of a writ of habeas corpus, the *Heck* doctrine bars Plaintiff's civil conspiracy claim.

Plaintiff's claim against these Defendants under RICO also fails. RICO prohibits a person who is employed by or associated with any enterprise to conduct the affairs of the enterprise through a pattern of racketeering activity or collection of an unlawful debt. 18 U.S.C. § 1964(c). "Racketeering activity" is defined to include specific state criminal offenses and specific federal criminal offenses. 18 U.S.C. § 1961(1). Here, Plaintiff does not mention any offenses that constitute "racketeering activity" in the complaint. Plaintiff's failure to identify any predicate acts of racketeering activity is fatal to his RICO claim. *See Moon v. Harrison Piping Supply Co.*, 465 F.3d 719, 724 (6th Cir. 2006) (court held that pleading two predicate acts was "necessary to sustain a RICO claim . . . [although it] may not be sufficient . . . ."); *Thomas v. Burt*, No. 1:21-cv-296, 2021 U.S. Dist. LEXIS 204649, at *21 (W.D. Mich. Oct. 25, 2021) (holding the prisoner-plaintiff failed to state a RICO claim for this reason (among others)).

Thus, the Court will also dismiss Plaintiff's civil conspiracy and RICO claims for failure to state a claim upon which relief may be granted.

## IV.

The Court will enter a separate Order dismissing this action for the reasons set forth herein.

Date:  March 24, 2025

*Joseph H. McKinley*
Joseph H. McKinley Jr., Senior Judge
United States District Court

cc: Plaintiff, *pro se*
4414.011

15